IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JASON L. HAJOSTEK, | CV 23-43-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| MARTIN J. O'MALLEY, | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jason L. Hajostek filed a complaint pursuant to 42 U.S.C. §§ 405(g), 1383(c) of the Social Security Act ("the Act"), 42 U.S.C. ch. 7, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title II and supplemental security income under Title XVI of the Act. (Doc. 7). The Commissioner filed the Administrative Record (the "Record" or "A.R.") (Doc. 5) and responded. (Doc. 9). Plaintiff replied. (Doc. 10).

Presently before the Court is Plaintiff's motion for summary judgment, seeking either reversal of the Commissioner's denial or remand for further proceedings. (Doc. 7). The motion is fully briefed and ripe for the Court's review.

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court finds the case should be remanded for further administrative proceedings.

## I.     Procedural Background

Plaintiff originally filed for disability benefits and supplemental security income on August 13, 2018. (A.R. 20). A hearing was held telephonically on June 18, 2020, in Billings, Montana, before Administrative Law Judge ("ALJ") Michele M. Kelley. (A.R. 20). On July 6, 2020, the ALJ issued a written decision, denying Hajostek's application. (A.R. 20–40). After the Appeals Council denied review (A.R. 881), the ALJ's decision became the Commissioner's final agency decision.

On appeal, Magistrate Judge Timothy Cavan found that (1) the ALJ erred by failing to provide substantial evidence showing that the report of Dr. Lee Perry is unpersuasive, and (2) the ALJ's failure to properly consider Dr. Perry's report might have "infected" the hypothetical the ALJ relied on. *Hajostek v. Kijakazi*, CV 20-185-BLG, 2022 WL 970349, at *5, 10 (D. Mont. Mar. 31, 2022). Judge Cavan reversed and remanded to the ALJ for further proceedings consistent with his order. (*Id.* at *10).

On remand, ALJ Michele Kelley acknowledged the Court's remand order and proceeded to follow the five-step sequential evaluation process in re-considering Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the onset date of January 1, 2020. (A.R. 785). At step two, she determined that Plaintiff has the following severe impairments: degenerative joint disease of the bilateral shoulders with internal derangement, status post bilateral shoulder surgery; degenerative disc disease of the surgical spine, status post fusion in 2019; degenerative disc disease, status post compression fractures of the thoracic spine; chronic obstructive pulmonary disease; mild non-ischemic cardiomyopathy; left sensory medial neuropathy of the wrists/bilateral carpal tunnel syndrome, status post-surgical releases; and irritable bowel syndrome. (A.R. 785). At step three, the ALJ considered the medical severity of Plaintiff's impairments and found that he did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments. (A.R. 789). The ALJ found that the medical evidence did not support Hajostek's allegations of frequent severe abdominal pain and diarrhea. (A.R. 805). Specifically, she found:

> [t]he evidence does not support the claimant's allegations of frequent severe abdominal pain and diarrhea over any continuous 12-month period since the alleged disability onset date. Testing has been for the most part negative, failing to reveal a significant inflammatory process. The claimant has not required consistent care from a gastroenterologist, and has not required emergency room care or inpatient hospital stay for ongoing gastrointestinal complaints. There is no evidence of significant weight loss ("F" exhibits). He has not required emergency room care or inpatient hospital stay for acute exacerbations of abdominal pain. He has not required surgery. The undersigned concludes that, giving the claimant every benefit of the doubt for some degree of persistent gastrointestinal symptoms, the claimant would require ready access to bathroom facilities during normal work breaks, or every two hours.

However, the evidence does not support additional limitations that exceed the claimant's residual functional capacity.

(A.R. 805).

After finding Plaintiff not disabled at step three, the ALJ did not need to proceed further, 20 C.F.R. § 404.1520(a)(4), but she proceeded to step four and determined Plaintiff's Residual Functional Capacity ("RFC") (A.R. 798). Based on the evidence in the record, the ALJ concluded that Plaintiff retained the ability to perform light work with the following limitations:

[H]e can lift/carry/push/pull 20 pounds occasionally, and 10 pounds frequently. He can frequently engage in pushing/pulling within the above lifting parameters. He can stand and/or walk for about four hours in an 8-hour workday with normal breaks, and can sit for about six hours in an 8-hour workday with normal breaks. Normal breaks are defined as breaks occurring every two hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes. The claimant can frequently reach in all other directions with the bilateral upper extremities. He can occasionally reach overhead with the bilateral upper extremities. The claimant can frequently handle and finger with the bilateral upper extremities. He can frequently climb ramps or stairs. He can frequently balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to temperature extremes, noise (i.e., he can tolerate noise levels of 3/5 as defined in the Selected Characteristics of Occupational Titles, but none greater), vibration, and fumes, odors, dust, gases, or poor ventilation. He must avoid even moderate exposure to hazards, including wet, slippery, or uneven surfaces, unprotected heights, and dangerous machinery. He must have ready access to bathroom facilities during normal work breaks, or every two hours. He requires a single point cane for balance. He can understand, remember, and carry out simple, detailed, and complex tasks. He can maintain attention, concentration, persistence, and pace for such tasks for 8-hour workdays and 40-hour workweeks. He can tolerate interaction with supervisors,

4

co-workers, and the public.  He can tolerate usual work situations. He
can tolerate changes in routine work settings.

(A.R. 798–99).  Taking into consideration Plaintiff's RFC, the ALJ found at step

four that Plaintiff could not perform his past relevant work as an automobile

mechanic and concrete laborer.  (A.R. 808).  At step five, the ALJ determined there

were jobs in significant numbers in the national economy that Plaintiff could perform

given his age, education, experience, and RFC.  (A.R. 809).  The ALJ found Plaintiff

able to perform the requirements of occupations such as mail clerk, office helper,

addressing clerk, and charge account clerk.  (A.R. 809).  Accordingly, the ALJ found

Plaintiff not disabled under the Act.  (A.R. 810).

Plaintiff thereafter filed the instant action.  (Doc. 2).

## II.   Legal Standards

### A.    Scope of Review

The  Act  allows  unsuccessful  claimants  to  seek  judicial  review  of  the

Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope

of judicial review is limited. The Court must affirm the Commissioner's decision

unless it "is not supported by substantial evidence or it is based upon legal error."

*Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *see also Farlow v. Kijakazi*, 53

F.4th 485, 487 (9th Cir. 2022).  "Substantial evidence is more than a mere scintilla

but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*,

112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence

5

which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

A court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *see Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). In considering the record, the court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). However, even if the court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (internal quotations and citations omitted). "Even when the ALJ commits legal error, [the court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

On remand, the ALJ may consider any issues relating to the claimant's claim, "whether or not they were raised in the administrative proceedings leading to the final decision" in the claimant's previous claim. 20 C.F.R. § 404.983(a); *see also*

6

*Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008) ("[I]n the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for disability benefits."). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

### B.    Determination of Disability

To qualify for disability benefits under the Act, a claimant must show: (1) they suffer from a medically determinable physical or mental impairment that can be expected to last for a continuous period of 12 months or more or would result in death; and (2) the impairment renders the claimant incapable of performing the work they previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007).

The Commissioner assesses a claimant's disability through a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of the process. *Burch*, 400 F.3d at 679. At the fifth and final step, the burden shifts to the Commissioner. *Id.* The five steps are:

(1) Whether the plaintiff is currently working in a substantially gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i).

7

(2) Whether the claimant's medical impairments meet the regulations' severity and durational requirements. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant is working, or the claimant's impairments do not meet the severity and durational requirements, the ALJ must find the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), (b).

(3) Whether the impairment "meets or equals" one of a list of specific impairments described in 20 C.F.R., Part 220, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii).

(4) Whether the claimant can do any work that they have done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the ALJ assesses the claimant's RFC, or the most the claimant can do with their impairments and related symptoms. *Id.*; 20 C.F.R. § 404.1545(a)(1).

(5) Whether the claimant can perform other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

*See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). If the ALJ finds the claimant not disabled at any step, they do not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

## III.   Discussion

The Court summarizes Plaintiff's arguments as follows: (1) the ALJ failed to include all of Hajostek's impairments at step two; (2) the ALJ improperly discounted Hajostek's subjective symptom testimony; (3) the ALJ failed to follow the Court's order on remand when she improperly evaluated the medical opinion of Dr. Perry, including by not explaining how Hajostek's ability to travel to Mexico contradicts Dr. Perry's report; (4) the ALJ erred in not considering the additional evidence

Plaintiff submitted, including several surgeries; and (5) the ALJ erred by failing to incorporate all of Hajostek's impairments into the vocational expert's hypothetical.[1]

In response, the Commissioner argues (1) the law of the case precludes Plaintiff's arguments about the ALJ's evaluation of his severe impairments and symptom allegations, and (2) the ALJ reasonably assessed the persuasiveness of Dr. Perry, that was supported and consistent with the record. (*See* Doc. 9 at 2). The Commissioner asserts that Plaintiff's arguments about the ALJ's hypothetical questions to the Vocational Expert is cumulative of his other challenges, so the Commissioner does not address this issue. (*Id.* at 2 n.1).

The Court will first address the application of the law of the case doctrine as it applies to the arguments that Hajostek made before Judge Cavan in his first appeal. Then the Court will address Hajostek's other arguments in turn.

A.    *Law of the Case Doctrine*

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The doctrine "appl[ies] to social security administrative remands from federal court in the same way [it] would apply to any other case." *Id.*; *see also Nolte v. Astrue*, No. CV 11-0210-PHX,

---

1. Hajostek's "statement of issues presented for review" is difficult to reconcile with his briefing as various arguments are interspersed at random throughout his brief. Accordingly, the Court has restated the issues as articulated here.

2012 WL 4466558, *2 (D. Ariz. Sept. 27, 2012) ("Courts reviewing Social Security cases after a limited remand have refused to re-examine issues settled by a district court's prior order.").  "The doctrine is concerned primarily with efficiency[] and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.  As the record on remand will often include evidence that post-dates the ALJ's initial decision, any new evidence presented must be "substantially different," or the law of the case doctrine would be rendered meaningless in Social Security cases. *See Marquita Marie Q. v. Saul*, No. 3:19-cv-01280, 2020 WL 7024653, at *7 (S.D. Cal. Nov. 30, 2020); *see also Merritt v. Mackey*, 932 F.2d 1317, 1321 (9th Cir. 1991) ("The prior decision of legal issues should be followed on a later appeal unless the [subsequent] evidence . . . was substantially different[.]") (internal citations and punctuation marks omitted).

District courts in the Ninth Circuit have applied the law of the case doctrine to Social Security cases when declining to reconsider issues that were decided by a prior remand order. *See, e.g., Hammons v. Berryhill*, CV 19-49-H, 2021 WL 2805324, at *4 (D. Mont. Jul. 6, 2021); *Gladys M. v. Saul*, No. 2:19-CV-09025, 2021 WL 1381272, at *5 (C.D. Cal. Mar. 5, 2021); *Sheila M. v. Kijakazi*, No 4:21-CV-03129, 2023 WL 2764640, at *7 (E.D. Wash. Mar. 31, 2023).

The Commissioner generally argues that the law of the case precludes Plaintiff's arguments about the ALJ's evaluation of his severe impairments and symptom allegations. (Doc. 9 at 2).  First, the Commissioner argues that because Judge Cavan concluded that the ALJ committed no error at step two and considered all of the Plaintiff's impairments, severe and non-severe, in assessing his RFC, the law of the case prohibits the Court from reconsidering the ALJ's decision at step two. (*Id.* at 3 (citing A.R. 910–12)).  Second, because Judge Cavan found the ALJ provided "specific, clear, and convincing reasons" to discount Plaintiff's self-reports about the severity and limiting effects of his symptoms, the law of the case prohibits re-litigation of the ALJ's findings as to Plaintiff's credibility regarding his subjective symptoms. (*Id.* (citing A.R. 912–18)).

On reply, Plaintiff argues that the law of the case does not apply because the evidence and the findings on remand are substantially different. (Doc. 10 at 3).  He asserts that, as the ALJ found two additional severe impairments at step two, the evidence the ALJ considered on remand was substantially different. (*Id.* at 3–4).

The Court first finds that the law of the case applies because Plaintiff presents the same arguments here that he presented to Judge Cavan.

In front of Judge Cavan, Plaintiff argued that the ALJ erred at step two by inadequately considering medical opinion evidence concerning his vestibular disorder, gastrointestinal symptoms, tinnitus, and mental impairments, resulting in

an improper finding of those impairments as non-severe. *See Hajostek*, 2022 WL
970349, at *6. Judge Cavan found that the ALJ did not err at step two because she
considered Hajostek's gastrointestinal symptoms in calculating Hajostek's RFC,
and, even if she had erred, because Hajostek prevailed at step two, any error was
harmless. *Id.*

Plaintiff further argued before Judge Cavan that the ALJ erred by improperly
discounting subjective symptom testimony without providing clear and convincing
reasons to reject the testimony as to several of his claimed medical issues, including
his gastrointestinal problems, vestibular disorders, and his mental health
impairments. *Id.* at *7. Judge Cavan found that the ALJ had cited "specific, clear,
and convincing reasons for rejecting Hajostek's subjective testimony about the
severity of his symptoms." *Id.* Specifically, Judge Cavan found:

> [T]he ALJ determined that Hajostek's medically determinable
> impairments could reasonably be expected to cause his symptoms, and
> there is no argument that he is malingering. Therefore, the ALJ was
> required to cite specific, clear, and convincing reasons for rejecting
> Hajostek's subjective testimony about the severity of his symptoms.
> The Court finds the ALJ did so.
>
> First, Hajostek testified that his gastrointestinal problems cause him to
> have diarrhea ninety percent of the time, with five-to-six-bathroom
> breaks required on good days, and three to four days a week with almost
> constant bathroom use. The ALJ found this testimony was contradicted
> by mostly normal gastrointestinal examinations, lack of specialty care,
> no evidence of weight loss, and medical records which document
> periodic flareups which typically run its course. These findings are
> supported by the record. Nevertheless, to Hajostek's argument that the
> ALJ ignored his testimony regarding his gastrointestinal symptoms, the

ALJ considered and accounted for this testimony in the RFC and provided that "[h]e must have ready access to bathroom facilities during normal work breaks, or every two hours."

*Id.* at *7–8.

Here, Hajostek argues that the ALJ "*again* improperly failed to include" gastrointestinal symptoms as a severe impairment. (Doc. 7 at 22) (emphasis added); *see also* Brief of Plaintiff at 6, *Hajostek*, CV 20-185-BLG ("The ALJ improperly failed to include as [a] severe impairment[] . . . gastrointestinal symptoms[.]"). He further argues that the ALJ erred by discounting Hajostek's subjective symptom testimony as to how much time he "spend[s] in the bathroom" without citing clear and convincing reasons for why she did so. (Doc. 7 at 28); *see also* Brief of Plaintiff at 28, *Hajostek*, CV 20-185-BLG (arguing the ALJ did not "cite specific, clear, and convincing reasons for rejecting [Hajostek's] subjective testimony about the severity of his symptoms," namely, that he would need to "spend[] more time in the bathroom" than an employer would allow).

As Hajostek's contentions were previously argued and decided by Judge Cavan, the law of the case doctrine applies. Because the law of the case applies, Hajostek now bears the burden to show that an exception applies, *see Kidd v. Mayorkas*, 645 F. Supp. 3d 961, 966 (C.D. Cal. 2022), and he fails to point to a single piece of "substantially different" evidence used by the ALJ. Rather, Hajostek only states that the "law of the case does not apply" because ALJ's findings show

that she must have considered "substantially different" evidence. (*See Doc.* 9 at 2 n.2). Because Plaintiff has not provided any evidence that the exception to the law of the case applies, the Court reiterates Judge Cavan's holding and finds that the ALJ did not err at step two when she considered Hajostek's impairments, nor did she err when she discounted Hajostek's self-reports about the limiting effects of his gastrointestinal symptoms.

Additionally, even if the law of the case does not apply to the ALJ's findings as to Hajostek's severe impairments, because the ALJ decided in his favor at step two, Hajostek is not prejudiced by the failure to include additional severe impairments, and any alleged error is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Further, even if the law of the case does not apply to the ALJ's findings regarding Hajostek's subjective symptom testimony, the Court finds the ALJ did not err because she reasonably evaluated Hajostek's testimony. The credibility of a claimant's testimony is analyzed in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ determines whether the claimant has provided objective medical evidence of an impairment or impairments that could reasonably be expected to produce the pain or symptoms alleged. *Id.*; 20 C.F.R. § 404.1529(a), (c). Second, if the claimant provides such objective medical evidence

and there is no affirmative evidence of "malingering",[2] the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so, meaning that the ALJ's findings are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010); *see also Reddic v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (A.R. 800). Then, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

---

2. Malingering means "[t]o pretend or exaggerate illness in order to escape duty or work; to feign or produce physical or psychological symptoms to obtain financial compensation or other reward." *Malingering, Oxford English Dictionary*, https://www.oed.com/dictionary/malinger_v?tab= meaning_ and_use #38291488 (last visited Feb. 15, 2024).

(A.R. 800). The ALJ noted the Plaintiff claimed several symptoms, including gastrointestinal symptoms. (A.R. 800–805).

The ALJ pointed to several discrepancies between Plaintiff's claims of "frequent abdominal pain and diarrhea" and his medical record. (A.R. 804–805). After describing Plaintiff's medical history in detail, she notes:

> Testing has been for the most part negative, failing to reveal a significant inflammatory process. The claimant has not required consistent care from a gastroenterologist, and has not required emergency room care or inpatient hospital stay for ongoing gastrointestinal complaints. There is no evidence of significant weight loss ("F" exhibits). He has not required emergency room care or inpatient hospital stay for acute exacerbations of abdominal pain. He has not required surgery. The undersigned concludes that, giving the claimant every benefit of the doubt for some degree of persistent gastrointestinal symptoms, the claimant would require ready access to bathroom facilities during normal work breaks, or every two hours. However, the evidence does not support additional limitations that exceed the claimant's residual functional capacity.

(A.R. 805).

The ALJ also found that Hajostek's "statements about the intensity, persistence, and limiting effects of symptoms . . . are inconsistent with the claimant's activities of daily living." (A.R. 805). She notes that:

> At a hearing held on October 12, 2022, the claimant testified he watches his grandchildren with his wife, but has a special needs grandchild, and does not watch the grandchildren alone. He stated he rides a scooter when he goes to the store. He indicated he is able to perform some chores, including washing dishes in small increments and sweeping. He alleged he could not perform any household chores on "bad days."

The claimant's activities of daily living suggest the claimant is not functionally impaired to the extent alleged. While the undersigned does not dispute that the claimant's impairments would cause some limitation in his ability to perform some work-related activities, the evidence overall does not support limitations beyond those set forth in the residual functional capacity.

(A.R. 805–06)

Based on its review, the Court finds that the ALJ provided specific, clear, and convincing reasons from the medical evidence to discount Plaintiff's testimony relating to his symptoms. While the Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding "is supported by substantial evidence in the record," a court "may not engage in second-guessing.").

Accordingly, Hajostek's motion is denied as to his arguments that the ALJ failed to include all of Hajostek's impairments at step two, and that the ALJ improperly discounted Hajostek's subjective symptom testimony.

   *B.     Dr. Perry's Testimony*

The Court next addresses Plaintiff's argument that the ALJ failed to comply with Judge Cavan's order to provide substantial evidence to show Dr. Perry's report was unpersuasive. The Court finds the ALJ's finding that Dr. Perry's opinion was unpersuasive to be unsupported by substantial evidence, namely, the ALJ (1) did not explain why she cites portions of treatment notes that disagree with Dr. Perry's

17

recommendation while disregarding the portions of the treatment notes that support Dr. Perry's recommendations, and (2) failed to explain why Hajostek's visit to Mexico contradicts Dr. Perry's report.

In her 2020 decision, the ALJ found Dr. Perry's opinion that Hajostek may benefit from "repeating or summarizing instructions, breaking information into small pieces, working in a quiet, non-distracted environment, and technology for memory reminders" to be unsupported by objective medical evidence. (A.R. 37–38). First, the ALJ found that Hajostek had "mostly unremarkable clinical exams." (A.R. 38). Second, the ALJ pointed out that Hajostek refused treatment for any psychiatric condition. (A.R. 38). Third, the ALJ found Dr. Perry's opinion was inconsistent with Hajostek's "activities of daily living, including travel to Mexico for a wedding." (A.R. 38).

Judge Cavan found the ALJ failed to provide substantial evidence to show that Dr. Perry's report was unpersuasive. *Hajostek*, 2022 WL 970349, at *5. Judge Cavan noted several instances of the ALJ using "isolated entries" of "unremarkable clinical exams" to support her conclusion, and that a full examination of the record showed the ALJ ignored evidence that did not support her conclusion and failed to explain how Hajostek's ability to travel to Mexico contradicted Dr. Perry's report. *Id.* As Judge Cavan explained,

> The ALJ points to one of Hajostek's social security disability exams where his "mental examination revealed [he was] oriented to person,

18

place, and time. [He] was able to demonstrate good judgement and reason, without hallucinations, abnormal affect or abnormal behaviors during the examination. Patient is not suicidal." But this examiner concluded she "believe[d] [Hajostek] would benefit from a psychiatric exam and establishing care with a counselor given his ongoing physical health decline, personal and familial history of mental illness." The ALJ next cites to a record by Hajostek's neurologist that provided his mental status was normal. This same treatment note, however, states that Hajostek will have a neuropsychology evaluation, and that he "continues to experience recurrent episodes of altered awareness," that "[s]omatization and conversion disorder [were] suspected," and that "[h]is situation is complicated by comorbid psychiatric disease." Last, the ALJ cites to one of Dr. Flook's treatment notes that documents Hajostek's mental status as "[a] little bit fatalistic in his speech pattern, but otherwise normal," but ignores entries in which Dr. Flook expressed concern regarding Hajostek's psychiatric symptoms. The entries cited by the ALJ not only contradict themselves, but also the ALJ's own findings acknowledging Hajostek's treatment with medications for his mental impairments and concluding that Hajostek has medically determinable mental impairments.

On remand, the ALJ again found the opinion of Dr. Perry unpersuasive. (A.R. 808). She cites the same three "isolated entries" in the record to show "unremarkable clinical exams." (A.R. 808). She proceeded to "acknowledge these are isolated mental status exams, but this is largely due to the claimant's lack of treatment and refusal to pursue any psychiatric treatment for a mental impairment," but that when an exam of mental status was performed, "it has been mostly unremarkable." (A.R. 808). The Court finds that the ALJ explained why she only cited isolated entries.

However, the ALJ again did not explain why she characterizes Hajostek's clinical mental exams as "mostly unremarkable," while ignoring the obvious

contradictions within the same treatment note. (*See* A.R. 808). Accordingly, her decision is not supported by substantial evidence.

The Court also finds the ALJ erred in not addressing Judge Cavan's finding that she failed to explain why Hajostek's ability to travel contradicted Dr. Perry's report. On remand, the ALJ provided more description of the travel to the wedding, which included flying from Bozeman, Montana, to Moline, Illinois, then being driven from Illinois to Texas by his brother and wife, and then boarding a cruise ship to Cozumel, Mexico, attending the wedding, and traveling back to Bozeman the same way. (*See* A.R. 871). However, the ALJ erred when she failed to explain *why* Plaintiff's travel with his family members is inconsistent with Dr. Perry's opinion that Plaintiff "may benefit from repeating or summarizing instructions, breaking, information into small pieces, working in a quiet, non-distracted environment, and technology or memory reminders." (*See* A.R. 872). The ALJ must connect the dots here.

The Court finds the ALJ's errors were not harmless because they negate the validity of the ALJ's ultimate disability decision. Accordingly, the Court finds that, as the ALJ failed to follow the remand instructions regarding the weight of Dr. Perry's opinion, and this error was not harmless, the Court remands this case to the ALJ again.

C. *New Evidence*

Hajostek next argues that the ALJ erred in not considering additional evidence, including his surgeries in 2019, 2020, and 2021. (*See* Doc. 7 at 21–22). The Commissioner does not respond to this argument.

Whether the ALJ must hear new evidence on remand depends upon under which authority the district court remanded the case. Section 405(g) of the Social Security Act authorizes two types of remand: (1) a post-judgment—or sentence four—remand and (2) a pre-judgment—or sentence six—remand for the ALJ to consider "new evidence which is material." 42 U.S.C. § 405(g). Sentence four states that the district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the case for a rehearing." *Id.* The text of sentence six explicitly speaks of permitting new evidence, but sentence four remands may also involve taking new evidence, if ordered by the district court. *Guzman v. Shalala*, No. C 94-20717, 1995 WL 437720, at *2 (N.D. Cal. Jul. 19, 1995).

Judge Cavan reversed and remanded under sentence four of § 405(g). *Hajostek*, 2022 WL 970349, at *10. On remand, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings consistent with Judge Cavan's order. (A.R. 925). The Appeals Council further directed the ALJ to offer Plaintiff the opportunity for a hearing. (A.R. 925). In such cases, the

Social Security Administration's manual, HALLEX, explains that ALJs "generally decide the remanded issues through the date of the new hearing decision." Soc. Sec. Admin., *Hearings Appeals and Litigation Law (HALLEX) Manual* I-2-8-18(A). But HALLEX does not dictate that the ALJ must or must not consider new evidence following a remand. *Id.* While some courts have found that ALJs must consider new material evidence on remand, *see, e.g., Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1366 n.5 (M.D. Fla. 2009) (concluding that 11th Circuit law dictated the ALJ consider new material evidence on remand), the Ninth Circuit has not addressed the issue of new evidence in a sentence four remand.

In the absence of binding precedent, because neither Judge Cavan nor the Appeals Council ordered the ALJ to consider new material evidence on remand, the Court finds the ALJ did not err in not considering additional evidence, including Hajostek's surgeries.

D.    *Vocational Expert Hypothetical*

Hajostek finally argues that the ALJ failed to incorporate all his impairments and limitations into the hypothetical questions posed to the vocational expert. (Doc. 7 at 27).

At step five, the ALJ compares the claimant's RFC with their vocational background and considers whether the claimant can do past relevant work. 20 C.F.R. § 404.1560(b)(2). If the claimant has the RFC to perform past relevant work, the

ALJ will find the claimant not disabled. § 404.1560(b)(3). In considering whether the claimant can conduct past relevant work, the ALJ does "not consider . . . vocational factors of age, education . . . or whether [the claimant's] past relevant work exists in significant numbers in the national economy." *Id.* In determining whether a claimant can do past relevant work or other jobs that exist in the national economy, the ALJ relies on the vocational expert's testimony. *Wischmann v. Kijakazi*, 68 F.4th 498, 501 (9th Cir. 2023).

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the . . . claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Because the ALJ failed to properly consider Dr. Perry's report, the error impacted the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Hajostek could perform work.

Accordingly, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

23

## IV.   Remand or Reversal

Plaintiff asks the Court to reverse the decision of the ALJ or remand this case for proper consideration of all the medical and vocational evidence, or alternatively for a remand for an award of benefits. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ should (1) address the contradictions within the treatment notes she cites and explain why the parts of the treatment notes that do not support her conclusion—and which seem consistent with Dr. Perry's opinion—are unpersuasive; (2) explain why Plaintiff flying, driving, and taking a cruise ship accompanied by family members is inconsistent with Dr. Perry's opinion that Plaintiff "may benefit from repeating or summarizing instructions, breaking, information into small pieces,

working in a quiet, non-distracted environment, and technology for memory reminders." The ALJ should consider new evidence if instructed by the Appeals Council.

## V.    Conclusion

Based on the foregoing, IT IS HEREBY ORDERED:

(1)     The Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (Doc. 7).

(2)     The Commissioner's decision be REVERSED and this matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this _7th_ day of June, 2024.

SUSAN P. WATTERS
United States District Judge